HOUSING AUTHORITY OF THE CITY OF HARTFORD
*v.* CELINES DELEON ET AL.
(AC 23288)

Lavery, C. J., and DiPentima and Dupont, Js.

Argued June 2—officially released September 9, 2003

*Rudolph Arnold*, for the appellant (plaintiff).

*Opinion*

DiPENTIMA, J. In this summary process action, the plaintiff housing authority of the city of Hartford appeals from the judgment of the trial court awarding

possession of certain premises to the defendant Celines DeLeon.[1] On appeal, the plaintiff claims that the court improperly (1) interpreted General Statutes § 47a-11 as applying solely to the defendant's actions and not to the actions of her guests, and (2) abused its discretion by excluding a police report from evidence. We agree with the plaintiff and, therefore, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. On August 14, 2000, the defendant entered into a lease with the plaintiff for the premises at 24-H Dutch Point in Hartford. Thereafter, she took possession of the premises and presently remains in possession.

On November 11, 2001, a team of seven police officers conducted surveillance of the defendant's residence. The police observed a pattern: A person would knock on the defendant's door; when someone opened the door there would be a brief conversation, and the parties would then exchange currency for a small item. After the transaction, the party receiving the item routinely was stopped by the police. That process resulted in several arrests, and the police gained intelligence concerning the activities occurring in the defendant's residence.

On the basis of those observations, an officer approached the defendant's residence and knocked on the door. When the door was opened, the officer smelled marijuana and observed other drug related activity. The officer immediately signaled the rest of the team of officers to enter the apartment. Upon entering, the officers observed a large number of people in the defen-

[1] Leonard White, originally named as a defendant in this action, failed to appear at the summary process trial on February 19, 2002, and a default judgment was rendered against him. He is not a party to this appeal. We therefore refer in this opinion to Celines DeLeon as the defendant.

dant's residence who were detained downstairs while the other officers searched the remainder of the apartment. The officers located the defendant in one of the two upstairs bedrooms. In the other bedroom, they recovered a sandwich bag containing numerous small plastic bags, each containing marijuana. As a result of that incident, the defendant was arrested.

On December 14, 2001, the plaintiff served the defendant with a notice to quit possession and to vacate the premises on or before December 31, 2001. The plaintiff next brought this summary process action seeking possession of the premises at 24-H Dutch Point on the ground that the defendant had failed to conduct herself in a manner that would not constitute a serious nuisance in violation of § 47a-11 (g).[2] After trial, the court concluded that the plaintiff had failed to carry its burden of proof of showing that the defendant had used the premises for the sale of illegal drugs.[3] On the basis of that finding, the court rendered judgment for the defendant. The plaintiff thereafter appealed.

I

The plaintiff first claims that the court improperly limited its application of § 47a-11 (g) to the actions of the defendant. The plaintiff argues that the legislative

[2] General Statutes § 47a-11 provides in relevant part: "A tenant shall . . . (g) conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a nuisance . . . or a serious nuisance . . . ."

[3] Although the complaint alleges that the defendant and Leonard White failed to conduct themselves in a manner that would not constitute a serious nuisance in that they had used the premises for the illegal sale of drugs, it is clear that at the time of trial, the parties were on notice that the plaintiff intended to proceed as to the actions of the defendant's guests. See *Tedesco* v. *Stamford*, 215 Conn. 450, 463, 576 A.2d 1273 (1990) (where defendant had sufficient notice of claims not specifically alleged, no material variance between pleadings and proof), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992).

history makes clear that the legislature intended that the actions of guests may constitute a serious nuisance, within the meaning of General Statutes §§ 47a-11 (g) and 47a-15. We agree.

We begin by setting forth the appropriate standard of review. The question of whether § 47a-11 imposes a duty on the court to consider the actions not only of the defendant, but also of her guests, presents a question of statutory construction over which our review is plenary. See *Vibert* v. *Board of Education*, 260 Conn. 167, 170, 793 A.2d 1076 (2002); *HUD/Willow Street Apartments* v. *Gonzalez*, 68 Conn. App. 638, 647, 792 A.2d 165 (2002).

Pursuant to *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003), "[t]he process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. . . .

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the

bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 577–78.

At trial, the plaintiff alleged that the defendant had committed a serious nuisance by allowing the premises to be used for the sale of drugs in violation of § 47a-11 (g). Section 47a-11 provides in relevant part: "A tenant shall . . . (g) conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute . . . a serious nuisance, as defined in section 47a-15 . . . ." A "serious nuisance" as defined in § 47a-15 includes "using the premises *or allowing the premises to be used for* . . . the illegal sale of drugs . . . ." (Emphasis added.) General Statutes § 47a-15. The court found that the evidence submitted by the plaintiff was insufficient to prove that the defendant had used the premises to sell drugs, but did not consider whether she had allowed the premises to be used for the illegal sale of drugs.

In *Housing Authority* v. *Harris*, 28 Conn. App. 684, 691, 611 A.2d 934 (1992), aff'd, 225 Conn. 600, 625 A.2d 816 (1993), this court held that the failure to require others to conduct themselves in a manner that does not constitute a serious nuisance is not itself a serious nuisance. In response, the legislature passed Public Acts 1995, No. 95-247 (P.A. 95-247), § 6, which amended § 47a-15 and overruled *Harris* by expanding the definition of "serious nuisance" to include "allowing the premises to be used for drugs." 38 H.R. Proc., Pt. 12, 1995 Sess., p. 4406, remarks of Representative Paul R. Doyle. That enabled a landlord to evict a tenant, without the issuance of a twenty-one day pretermination notice, for the actions of a guest who had used the premises for the illegal sale of drugs. Moreover, the office of

legislative research, in analyzing that portion of P.A. 95-247 that concerns serious nuisance, observed that the bill makes it a serious nuisance for a tenant to allow rented premises to be used for prostitution or illegal drug sales. Having construed the legislative intent from that analysis and from the language and legislative history of the statutes, we conclude that the court's interpretation of §§ 47a-11 (g) and 47a-15 should not have been restricted to the actions of the defendant and should have taken into account the actions of the defendant's guests. We therefore reverse the judgment and remand the case for a new trial.

## II

We address the plaintiff's second claim because it raises an issue that is likely to arise on retrial. See *State* v. *Jones*, 234 Conn. 324, 351, 662 A.2d 1199 (1995). The plaintiff claims that the court abused its discretion by excluding a police report from evidence. The plaintiff argues that the police report was admissible under the business record exception to the hearsay rule. We agree with the plaintiff.

"It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *Baughman* v. *Collins*, 56 Conn. App. 34, 35, 740 A.2d 491 (1999), cert. denied, 252 Conn. 923, 747 A.2d 517 (2000).

"An out-of-court statement that is offered to establish the truth of the matters contained therein is hearsay. . . . The business records exception to the hearsay rule is set forth in General Statutes § 52-180.[4] [N]ot every statement contained in a document qualifying as a business record is necessarily admissible. To be admissible under § 52-180, the contents of a business record must be based on the entrant's own observations or on information transmitted to him by an observer whose business duty it was to transmit it to him. Statements obtained from volunteers are not admissible, although included in a business record, because it is the duty to report in a business context that provides the reliability to justify this hearsay exception. Information in a business record obtained from a person with no duty to report is admissible only if it falls within another hearsay exception. . . . A police report generally is admissible as a business record under General Statutes § 52-180. . . . To qualify under this statute the report must be based entirely upon the police officer's own observations or upon information provided by an observer with a business duty to transmit such information. . . . For example, a report prepared by an officer in charge of an accident investigation is admissible in its entirety, despite the fact that it contains information received from other officers assisting in the investigation. Such a report is not admissible, however, if it contains information furnished by a mere bystander." (Citations omitted; internal quotation marks omitted.) *Baughman* v. *Collins*, supra, 56 Conn. App. 36–37.

At trial, a proper foundation was laid for the police report's admission into evidence. The report had been

---

[4] General Statutes § 52-180 (a) provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter."

prepared by an investigating officer, and was based on his personal knowledge of the events and on information that had been provided to him by officers with a business duty to report the information. It contained relevant information and satisfied the requirements of § 52-180. We conclude, therefore, that the court abused its discretion by disallowing the police report without explanation.

The judgment is reversed and the case is remanded for a new trial.

In this opinion LAVERY, C. J., concurred.

DUPONT, J., dissenting in part. Although I agree entirely with the analysis and reversal of the judgment as set forth in the majority opinion, I write separately because I respectfully disagree with the majority's decision to remand the matter for a new trial rather than to render judgment of possession for the plaintiff.

The trial court found in its memorandum of decision, and the majority has repeated, all of the necessary and relevant facts to resolve the issue, by a fair preponderance of the evidence, of whether the defendant Celines DeLeon had allowed her premises to be used for the sale of drugs.[1] Because the conclusion is inevitable, I would restore possession of the premises to the plaintiff. Restoration of possession to a landlord or tenant can ensue upon our reversal of the judgment in a summary process action where a lease has not yet expired by its term of occupancy. *Evergreen Manor Associates* v. *Farrell*, 9 Conn. App. 77, 78, 515 A.2d 1081 (1986);

---

[1] If the police report had been introduced into evidence, as the majority concludes it should have been, the ultimate fact, that the defendant had allowed her premises to be used for the illegal sale of drugs, is all the more inescapable. The report indicated that besides the arrest of the defendant, three other arrests for the possession and sale of narcotics were made. Searches of the arrested individuals revealed heroin packaged for street sale.

*Yankee Sailing Co.* v. *Yankee Harbor Marina, Inc.*, 5 Conn. App. 153, 157, 497 A.2d 93 (1985).

I recognize that "[o]rdinarily it is not the function of this court . . . to make factual findings . . . . Conclusions of fact may be drawn on appeal . . . where the subordinate facts found [by the trial court] make such a conclusion inevitable as a matter of law . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Reagan*, 209 Conn. 1, 8–9, 546 A.2d 839 (1988); see also *Papcun* v. *Papcun*, 181 Conn. 618, 621, 436 A.2d 282 (1980); *Bozzi* v. *Bozzi*, 177 Conn. 232, 240, 413 A.2d 834 (1979); *State* v. *Hanna*, 150 Conn. 457, 471, 191 A.2d 124 (1963). I believe this is such a case "where the undisputed facts [and] uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision." *State* v. *Reagan*, supra, 9.

It is indisputable that the defendant was allowing her premises to be used for the sale of drugs. Therefore, I respectfully dissent from the remand and instead would remand the case with direction to render judgment of possession for the plaintiff.